UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ARTHUR BEATTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-00622-JRS-DML |
| | ) | |
| HINSHAW,[1] | ) | |
| HOOLEY, | ) | |
| | ) | |
| Defendants. | ) | |

### ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT

"After another inmate tried to frame him as a snitch to get him attacked, Arthur Beatty, Sr., asked prison officials to investigate and remove that inmate from his dormitory. Not only did the officials refuse, he alleges, they also threatened that if he continued to press the issue, they would transfer him out of his favorable housing assignment and write him up for unfounded disciplinary violations." *Beatty v. Henshaw*, 826 F. App'x 561, 562 (7th Cir. 2020). Mr. Beatty filed this lawsuit based on the theory that Chaplain Hinshaw and Counselor Hooley violated his First Amendment rights. *Id.* The defendants seek summary judgment. Because the facts presented in the record on summary judgment do not support the claims alleged in the amended complaint, the defendants' motion for summary judgment, dkt [56], is **granted** and Mr. Beatty's motion for jury trial, dkt [77], is **denied**.

---

[1] Defendant Henshaw's name is really Hinshaw. The **clerk is directed** to update the docket to reflect the correct spelling of Mr. Hinshaw's last name.

## I. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). In this case, Mr. Beatty's response brief does not comply with Local Rule 56-1(e) because it does not include the required section labeled "Statement of Material Facts in Dispute" that identifies the potentially determinative facts and factual disputes that he contends demonstrate a dispute of fact precluding summary judgment. L.R. 56-1; *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("the district court is within its discretion to strictly enforce compliance with

its local rules regarding summary-judgment motions."). Nor is the amended complaint (which is the operative pleading in this case) or the brief in opposition to summary judgment signed under penalty of perjury. Thus, the response brief and amended complaint are inadmissible for purposes of defeating a motion for summary judgment. *See Owens v. Hinsley*, 635 F.3d 950, 954-55 (7th Cir. 2011) (noting that a verified response is equivalent to an affidavit for purposes of summary judgment). The Court did consider in full, however, Mr. Beatty's deposition transcript, dkt 56-1, Defendants' responses to interrogatories (cited by both parties), dkts 56-2 and 56-3, and the grievance records, 56-4 and 56-5.[2]

While the evidence in this case is limited, the Court views that evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). However, if the non-movant's evidence is "merely colorable" or "not significantly probative," then there is no genuine issue for trial and summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

---

[2] The Court also reviewed the affidavits submitted by Mr. Beatty. *See* dkt. 70-1 at pages 11 – 14. But these affidavits do not set forth any material facts. They simply relate to the circumstances surrounding the snitch note, not Mr. Beatty's interactions with the defendants. Relatedly, the Court reviewed the "Safe Facilities Program," IDOC policy number 02-03-116, and IDOC policy number 00-02-301, but these policies are not material to the First Amendment claims proceeding in this case. Dkt. 70-1 at p. 19-26; and 33. This is because "[a] violation of state law will not create a constitutional claim, and compliance with state law will not shield a defendant from otherwise-unconstitutional conduct . . . ." *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021).

## II. Undisputed Facts

During all relevant times, Mr. Beatty was an Indiana prisoner incarcerated at the Correctional Industrial Facility (CIF). On December 17, 2018, an inmate dropped a "snitch note" which reported that "my bunky [John Doe] is off his medication and is throwing things at the wall in cell." Dkt. 56-5 at p. 1. Mr. Beatty reported that the note was written months earlier by another inmate when that inmate was housed with John Doe, but then dropped when Mr. Beatty shared a cell with John Doe for the purpose of setting up Mr. Beatty to be attacked by John Doe. *Id.*[3]

Mr. Beatty reported the note to Mr. Hooley, his counselor, on December 20. Dkt. 56-5 at p. 2. This was Mr. Beatty's only interaction with Mr. Hooley regarding the snitch note. Dkt. 56-1 at p. 37. The record is unclear, but it appears that Mr. Hooley, Mr. Henshaw, and Mrs. Troxell (another counselor) were all present during this meeting. Dkt. 56-1 at p. 28. Mr. Beatty testified that Mr. Hooley "threatened to move me if I didn't stop with this write up, with this action." Dkt. 56-1 at pp. 16, 35. Specifically, Mr. Hooley threatened to kick him out of the institution or move him out of the faith-based dorm. *Id.*

Mr. Hooley testified that during his meeting with Mr. Beatty, Mr. Beatty requested a move to separate himself from his cellmate. In response, Mr. Hooley made the move after working through the chain of command to get permission.[4] Dkt. 56-3 at p. 2, 4. These moves were authorized by Mears and Upchurch. While Mr. Beatty was moved to different cells, there is no evidence upon which to conclude that he was ever removed from the faith-based dorm.

---

[3] Mr. Beatty reported that he gave the note to Chaplain Bergus on December 25 to be delivered to internal affairs. Dkt. 56-5 at p. 2. Mr. Beatty also testified that Mr. Hooley told him that the note had been turned over to internal affairs. Dkt. 56-1 at p. 24.

[4] The IDOC's records reflect that Mr. Beatty was moved from E1-29B to E3-15B on December 15, 2018, and then to E1-20A on December 21, 2018. Dkt. 56-6 at p. 2.

On December 25, 2018, Mr. Beatty filed a grievance regarding an alleged "snitch note," Dkt. 56-4 at p. 3. Mr. Beatty sought to have the offender who dropped the note removed from the faith-based dorm or transferred from CIF, in addition to monetary damages. *Id.*

On December 29, Mr. Beatty had a meeting with Chaplain Hinshaw about the note. *Id.* 56-5 at p. 2. Mr. Hinshaw testified that he does not recall that conversation, but that he would have proceeded as he usually does by listening to any problems the inmate is having. Dkt. 56-2 at p. 2-3. He testified that it is not his responsibility to investigate "snitch notes." *Id.* But that he worked with the Unit Team to move Mr. Beatty and that the issue is resolved because Mr. Beatty is safe and free from harm *Id.* at 3-4. Mr. Beatty testified that he went to Mr. Hinshaw and "he sided with them and said go sit down somewhere, you know, ain't nothing going to happen. So I expressed my opinion. He then threatened to move me. Threatened as an intimidation if you don't stop writing this grievance . . . . we are going to move you." Dkt. 56-1 at pp. 16-17, 28; *see also* dkt. 56-1 at p. 32 (stating the Mr. Beatty met with Mr. Hinshaw "no more than twice, three times.").

On January 3, 2019, Counselor Hooley offered Mr. Beatty protective custody in response to his fears for his safety, but he waived protective custody. Dkt. 56-4. CIF's Offender Grievance Administrator responded to Mr. Beatty's grievance on January 7, 2019, noting that Mr. Beatty waived protective custody and that "[o]ffenders cannot request that another offender be moved or transferred to another facility as a requested relief." Dkt. 56-4 at p. 2. Mr. Beatty marked that he disagreed with the response. *Id.*

Mr. Beatty appealed the response on January 8, 2019, stating that "[e]ven if I can't request the removal of another offender staff should do so. He [the offender who allegedly dropped the note] is a troublemaker." Dkt. 56-4 at 1. In a response dated January 9, 2018, the appeal was denied.

5

*Id.* Specifically, the facility level response noted that, "[t]he level 1 response is correct you cannot request the removal of another offender you can however request protective custody. When Mr. Hooley offered you protective custody, you refused it and signed a waiver. If you really feel as though you are in danger you may still request protective custody. No further relief shall be offered." *Id.*

Mr. Beatty was asked at his deposition what damages he is seeking in this case. He stated that he is going "for just mental stress and strain that one would impair due to the threats of these two individuals, Hooley and Hinshaw." Dkt. 56-1 at p. 45. He specifically denied suffering any physical injuries. *Id.* at 48-49.[5] In addition to money damages, Mr. Beatty "want[s] to be moved out of this facility." Dkt. 56-1 at p. 54.[6]

### III. Discussion

"'[T]he first amendment protects speakers from threats of punishment that are designed to discourage future speech.'" *Beatty*, 826 F. App'x at 563 (quoting *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009)). "Retaliation claims and chilling claims are related in that the Constitution protects citizens from penalties that follow protected speech (retaliation) and threats of penalties for future protected speech (chilling)." *Surita v. Hyde*, 665 F.3d 860, 877 (7th Cir. 2011) (citing *Fairley*, 578 F.3d at 525).

To prevail on a First Amendment chilling claim, a plaintiff must establish three elements: 1) he engaged in protected First Amendment activity; 2) the defendant's conduct would likely deter

---

[5] Mr. Beatty is notified that he is not eligible for compensatory damages related to his mental stress and strain in this lawsuit. The Prisoner Litigation Reform Act ("PLRA") provides "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).
[6] This is a change from the amended complaint which states that Mr. Beatty is not requesting any protection from staff or to be moved to another facility. Dkt. 13 at p. 3.

a person of ordinary firmness from continuing to engage in protected activity, and 3) his potential speech was at least a motivating cause of defendants' threat of punishment. *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

The defendants argue that they are entitled to summary judgment because plaintiff lacks sufficient evidence to support any of the three elements of his chilling claim. Dkt. 57 at pp. 3, 5.

The Court finds the third element to be dispositive. Specifically, there is no evidence upon which a reasonable jury could conclude that Mr. Beatty's potential future speech was at least a motivating cause of defendants' threat of punishment. The Seventh Circuit has explained, "a transfer initiated to punish a prisoner for engaging in protected activity would satisfy the causation element of retaliation, but a transfer initiated as a rational, justifiable response to the substance of the prisoner's complaint would not." *Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020).

In this case, the protected activity supported by evidence in the record is the filing of a grievance and Mr. Beatty's oral complaints to the defendants regarding his safety in the faith dorm. In response to Mr. Beatty's concerns that he was being set up by another inmate to be attacked by his cellmate, the defendants worked through the chain of command to have Mr. Beatty moved to a different cell. They also offered him placement in protective custody. Finally, the defendants explained (or threatened) that if Mr. Beatty persisted in raising concerns regarding his physical safety that he would be moved to another dorm or another facility.

No reasonable juror could conclude that informing Mr. Beatty that prison officials would transfer him if he continued to assert that he was in danger was not a rational, justifiable response to the substance of his complaints. *Holleman*, 951 F.3d at 879. Under these circumstances, transfer out of the dangerous faith-dorm would be motivated by the possibility of remedying his

complaints. *Turley v. Rednour*, 555 F. App'x 606, 610 (7th Cir. 2014) (affirming summary judgment in favor of defendants on retaliatory transfer claim where plaintiff was transferred to protective custody after complaining that he was "under attack"). There is no doubt that Mr. Beatty believes the misbehaving inmates should have been the ones transferred, but prison officials are entitled to significant deference when responding to grievances and maintaining order in a volatile environment. "To hold otherwise would absurdly result in requiring prison officials to respond to every grievance by enacting the prisoner's preferred solution, rather than allowing officials to exercise their own judgment." *Holleman*, 951 F.3d at 879.

Because the plaintiff lacks sufficient evidence to establish the elements of his chilling claim, the defendants are entitled to summary judgment in their favor.

### IV. Conclusion

The defendants are entitled to judgment as a matter of law. The motion for summary judgment, dkt [56], is **granted** and plaintiff's motion for a jury trial, dkt [77], is **denied**. Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 3/21/2022

_James R. Sweeney_
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ARTHUR BEATTY
876231
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel